Dear Mr. Faucheux:
You requested the opinion of this office concerning whether an Industrial Development Board, in order to encourage a company to move to Louisiana, may buy telecommunications equipment for a company and enter into a lease-back arrangement with said company. And, if so, are there restrictions on the terms and conditions which are contained in the arrangement?
We refer you to LA R.S. 33:4717.2, which provides in pertinent part as follows:
 A. Except as provided for those parishes in Subsection E below, in addition to authority granted by other laws, any
parish, municipality, industrial district, port, harbor and terminal district, or other political subdivision of the state, hereinafter referred to as "political subdivision," which is permitted by law to own land, buildings, or other property for industrial inducement purposes, shall have the authority to sell, lease, or otherwise dispose of, by suitable and appropriate contract, such transactions being hereinafter referred to as "transfers," to any enterprise locating or existing within, outside of, or adjoining to such political subdivision, all or any part of an industrial plant site, building, port, harbor, or terminal facility, or other property owned by the political subdivision. In determining the consideration for any transfer, the governing authority of the political subdivision may consider the potential value of the economic impact of the enterprise being induced to locate or expand within, outside of, or adjoining the political subdivision, as well as the value of the lands, buildings, or other properties involved. Prior to any transfer, the governing authority of the political subdivision shall give notice of its intention to do so, by publication of a notice of intention once a week for two consecutive weeks, beginning at least fourteen days from the date such action is contemplated. Such notice of intention shall include the following: (1) a general description of the proposed transfer, (2) a description of the property to be transferred, (3) the proposed consideration to be given in exchange for said property, (4) a statement that the proposed contract is on file for public inspection in the office of the political subdivision, (5) a statement as to the appraised value of such property as determined by a real estate appraisal made within the previous twelve months, and (6) a date, time, and place at which objections to such transfer will be received. Should five percent of the resident electors of the political subdivision object to said proposed transaction, an election shall be held for the purpose of submitting the question of the transfer to the voters in accordance with Chapter 6_B of Title 18 of the Louisiana Revised Statutes of 1950.
 B. The resolution or ordinance adopted by the governing authority authorizing any transfer of property of the political subdivision shall set forth, in a general way, the terms of the authorized transfer and that the contract is on file for public inspection in the office of the political subdivision. At the regularly scheduled meeting immediately prior to the meeting at which the resolution will be considered, the governing authority of the political subdivision shall announce to those persons present that the resolution will be considered at the next meeting. Such resolution or ordinance shall be published as soon as possible after adoption in one issue of the official journal of the political subdivision. For a period of thirty days from the date of publication of any such resolution or ordinance, any interested person may contest the legality of such resolution or ordinance or the validity of the authorized transfer, after which time, no one shall have any cause of action to contest the legality of the transfer for any cause whatsoever, and it shall be conclusively presumed thereafter that every legal requirement has been complied with, and no court shall have authority to inquire into such matters after the lapse of said thirty days.
 C. This Section shall not apply to property acquired from the proceeds of industrial development bonds issued in compliance with the provisions of laws authorized by Article 6, Section 21, of the Louisiana Constitution of 1974 or issued by industrial development boards in compliance with the provisions of Chapter 7 of Title 51 of the Louisiana Revised Statutes of 1950, as amended. In such instances, property may be leased, sold or otherwise disposed of in compliance with such laws. . . . (Emphasis added)
We are also enclosing copies of Op.Atty.Gen. Nos. 79-417, 93-642 and 99-267-A, which you may find informative with regards to sales and ad valorem tax issues.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH enclosures
*1 OPINION NUMBER 79-417
April 25, 1979
8 Bond Issues 90-A-1 Public Funds R.S. 51:1160
Industrial Development Boards are exempt from sales taxes. Projects funded by them should be built first by the company involved if a waiver of the exemption is wanted.
Mr. Fred G. Benton, Jr. Benton, Benton Benton Attorneys at Law 601 St. Ferdinand Street Baton Rouge, Louisiana 70802
Dear Mr. Benton:
Reference is made to your letter of April 12, 1979, in which you request an opinion of this office on behalf of the East Baton Rouge Council. You state that the council is considering the creation of an Industrial Development Board under Chapter 7 of Title 51 of the Louisiana Revised Statutes of 1950 and you ask the following questions:
`1. Would the Industrial Development Board of the Parish of East Baton Rouge, Louisiana, Inc. (the `Board'), if created, be exempt from sales and use taxation under the authority of LRS 51:1160?
2. Can such Board lawfully waive its tax exemption in respect to certain specific taxes, such as the sales and use tax?
3. LRS 51:1157 grants the Board the power to purchase, `construct, improve, maintain, equip and furnish' one or more projects. Mr. Harrison has expressed concern over the possibility that the Board, with bond proceeds and moneys made available by the company (the lessee), could become obligated to purchase desks, computers, typewriters, as well as operating supplies free of sales and use taxation under the exemption of LRS 51:1160, as above referred to. Your comments on this are requested.'
Regarding the tax exemption issue, I would refer you to La. R.S.51:1160 which reads in pertinent part as follows:
`Section 1160. Exemption from taxation; classification of bonds.
A corporation is hereby declared to be performing a public function . . . Accordingly, the corporation and all properties at any time owned by it . . . shall be exempted from all taxation in the state of Louisiana . . .'
It is the opinion of this office that based on the foregoing language in La. R.S. 51:1160, the Industrial Development Board is exempt from the payment of sales and use taxes.
In answer to your second question, my research uncovers no authority for the waiver by a public corporation of a tax exemption granted by the legislature. I would also refer you to Article VII, Section 14 of the Louisiana Constitution and raise the issue of its possible applicability should public funds be spent unnecessarily. However, I believe some financing arrangement could be perfected involving construction of any project by the company or industry involved in the financing, which would necessarily require payment of sales taxes on materials by that company. A sale of the facility to the Industrial Development Board under a lease purchase or a sale-back arrangement could then be used.
I believe an answer to your third question would be obviated should a sale and sale-back or lease-back arrangement be used. Otherwise, it would be within the power of the East Baton Rouge Council to decline to finance the purchase of equipment with bond proceeds.
*2 Trusting that this opinion adequately answers your question, I am
Yours truly,
 William J. Guste, Jr. Attorney General
 BY: Fred L. Chevalier Assistant Attorney General
La. Atty. Gen. Op. No. 79-417, 1979 WL 38836 (La.A.G.)
 OPINION NUMBER 93-642
RELEASED SEPTEMBER 20, 1993
122 — TAXATION — Exemption from property taxes — new industry 148 — TAXATION — Property taxes — liability of persons property CONST 7.21, R.S. 51:1151, R.S. 51:1152, R.S. 51:1160
While title to the property is held by the Industrial Development Board and property is leased to subsidiary of holding company for use as office facilities for corporate headquarters of holding company and its wholly owned subsidiary, property would be exempt from ad valorem taxation.
Mr. Charles L. Hamaker Attorney at Law Suite 200-A, Washington Plaza 300 Washington Street P.O. Box 2425 Monroe, Louisiana 71207
Dear Mr. Hamaker:
On behalf of The Industrial Development Board of The Parish of Ouachita, Louisiana, Inc. (the "Issuer"), you have requested the opinion of this office regarding the proposed issuance of not exceeding $40,000,000 of taxable industrial revenue bonds (the "Bonds") by the Issuer to finance a portion of the acquisition of an office building and related facilities in the Parish of Ouachita (the "Project"). The beneficiary of the financing will be Century Service Group, Inc., a Louisiana corporation ("Company"). This office is advised that Company is a subsidiary of Century Telephone Enterprises, Inc. ("Century"). The facts as presented to this office indicate that Century is strictly a holding company, and that Company is engaged solely in accounting, finance and engineering services. We are further advised that: 1) the Project is not designed for sales or distribution to the public of "services commonly classified as public utilities"; 2) neither Company nor Century are engaged in "the sale or distribution to the public of . . . telephone or other services commonly classified as public utilities" (R.S.51:1151); and 3) the Project will be utilized solely as Century and Company's corporate headquarters.
You have advised that Company will convey the Project to the Issuer, including the real property owned by Company, in stages as each phase is completed, and that the Issuer will enter into a Lease Agreement granting exclusive use and occupancy of the Project to Company. You further advise that Company has agreed to pay to the Issuer specified rental payments and other payments sufficient to pay principal and interest on the bonds. Your letter also states that upon payment to the Issuer of all amounts due on the Bonds, ownership of the Project will be conveyed to the Company.
According to your correspondence, the principal motivation for the issuance of the bonds is the exemption from ad valorem taxes (in accordance with R.S. 51:1160) which will occur as a result of the Issuer taking title to the Project. It is our further understanding that the Issuer will require payments in lieu of taxes, in an amount less than the taxes that would be due if the Project were on the tax rolls of the Parish. We are advised that the reduced payments in lieu of taxes are to serve as an inducement to Company to locate the Project in Ouachita Parish.
With regard to the foregoing, the Issuer asks:
 "Will the Project and the property be considered exempt from ad valorem taxation while leased to the Company if title thereto is held by the Issuer?"
La. Const. (1974) Art. VII, Sec. 21 provides a list of property that shall be exempt from ad valorem taxation. "Public lands; other public property used for public purposes" is included within the list of exempt property.
With regard to Industrial Development Boards, R.S. 51:1152
provides, in pertinent part:
"A. The legislature hereby finds and determines:
 (1) That the existence, development and expansion of commerce and industry are essential to the economic growth of the state and to the full employment, welfare and prosperity of its citizens;
***
 (4) That the present and future health, safety, right to gainful employment, and the general welfare of the people of the state merit and require the assistance of the state, its agencies, and political subdivisions in the development within the state and its political subdivisions of industrial, agricultural, manufacturing, and research enterprises . . . and in the attraction and retention of sound business and commercial enterprises which contribute to the economic growth and vitality of the state and its political subdivisions;
***
 (6) That the means and measures herein authorized by this chapter and the assistance provided in this chapter, especially with respect to financing, are in the public interest and serve a public purpose of the state in promoting the health, welfare, and safety of the citizens of the state . . . by the securing and retaining of private industrial, commercial and other enterprises and the resulting maintenance of a higher level of employment and economic activity and stability.
 B. It is the intent of the legislature by passage of this Chapter to authorize the incorporation in the several municipalities or in the parishes in this state of public corporations to acquire, own, lease, rent, repair, renovate, improve, finance, sell, and dispose of properties to the end that such corporations may be able to promote industry and develop trade by inducing manufacturing, industrial, commercial and other enterprises to locate in this state and further the use of its agricultural products and natural resources . . . and to acquire, own, lease, rent, repair, renovate, improve, finance, sell, and dispose of properties to the end that such corporations may be able to attract and retain business and commercial enterprises in the municipality or parish to maintain and expand employment and the economy in the area."
Additionally, R.S. 51:1160 pertinently provides:
 "The corporation is hereby declared to be performing a public function on behalf of the municipality or parish with respect to which the corporation is organized and to be a public instrumentality of such municipality or parish. Accordingly, the corporation and all properties at any time owned by it and the income therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Louisiana; provided, however, that the corporation may require the lessee of each of the projects of the corporation to pay annually to parish or municipal taxing authorities, through the normal collecting agency, a sum in lieu of ad valorem taxes to compensate such for any services rendered by them to such projects which sum shall not be in excess of the ad valorem taxes such lessee would have been obligated to pay to such authorities had it been the owner of such project during the period for which such payment is made." (Emphasis added).
Finally, we direct your attention to Attorney General's Opinion No. 88-454, which determined that while property upon which a warehouse and distribution facility were to be erected was leased to the developer, and title to the property was held by the issuer (an Industrial Development Board) of taxable revenue bonds, the property would be exempt from ad valorem taxation.
Based upon the foregoing, it is the opinion of this office that while the property is leased to Company and title to the property is held by the Issuer, the property will be exempt from ad valorem taxation.
Trusting this adequately responds to your request, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________________ JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jav 0348n
 OPINION NUMBER 99-267-A
November 22, 1999
8A Bond Issues 90-A-2 Public Funds 122 Taxation Art. VII, § 21 of Louisiana Constitution R.S. 51:1152, 51:1160
Industrial development board property which is leased to private company is exempt from ad valorem taxation. This conclusion does not raise and Article VII, Section 14 issue.
Mr. O. Ray Cornelius Foley Judell, L.L.P. One Canal Place, Suite 2600 365 Canal Street New Orleans, LA 70130-1138
Dear Mr. Cornelius:
On behalf of the Industrial Development Board of the City of New Orleans, Louisiana, Inc. (the "Board") you are requesting clarification of Op.Atty.Gen. 99-267. You advised that the Board intends to issue taxable revenue bonds pursuant to Chapter 7 of Title 51 of the Louisiana Revised Statutes of 1950, as amended, to encourage the acquisition of land and the acquisition, construction, development and equipping of an approximately 710 unit multi-family residential housing development in the City of New Orleans (the "Project"). The Board intends to acquire the land and improvements constituting the Project and lease it for payments sufficient to pay debt service on the bonds, plus other payments. Part of the incentives that are to be offered to the private developer include the negotiation of a payment in lieu of taxes in an amount less than the ad valorem taxes would be if the Project were owned by the private developer.
You requested the opinion of this office with respect to (i) the exemption of the Project from ad valorem taxes while owned by the Board, and (ii) the ability of the Board to negotiate and require a payment in lieu of taxes during the term of the ownership of the Project by the Board and the lease of the Project to the private developer in an amount less than would be paid in taxes if the Project were subject to ad valorem taxation.
Op.Atty.Gen. 99-267 concluded that while the property is leased to the private developer and title to the property is held by the Board, the property will be exempt from ad valorem taxation. Furthermore, the Board may negotiate and require a payment in lieu of tax during the term of the ownership of the Project by the Board and the lease of the Project to the private developer in an amount less than would be paid in taxes if the Project were subject to ad valorem taxes, provided that the payment in lieu of taxes is not structured such that it constitutes a donation of public funds in violation of ArticleVII, Section 14 of the Louisiana Constitution. You request clarification of the portion of the last sentence which refers to Article VII, Section 14 of the Louisiana Constitution.
Upon further review, we have determined that the reference to Article VII, Section 14 of the Louisiana Constitution is erroneous. If the property is exempt from ad valorem tax, there can be no violation of Article VII, Section 14 of the Louisiana Constitution when the developer pays ad valorem taxes, even if the amount of taxes paid are substantially less than the amount that would have been paid in the event the developer owned the buildings and there was no tax exemption. Accordingly, Atty.Gen.Op. 99-267-A is modified accordingly.
We apologize for any inconvenience this may have caused.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: MARTHA S. HESS
Assistant Attorney General
RPI/MSH